IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2010

## JERMAINE HUGHEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 03-00283     John T. Fowlkes, Jr., Judge**

**No. W2009-01072-CCA-R3-PC  - Filed April 21, 2010**

The petitioner, Jermaine Hughey, appeals the denial of his petition for post-conviction relief, arguing that he was denied the effective assistance of trial and appellate counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Jermaine Hughey.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rachel Newton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

In 2003, the petitioner was convicted by a Shelby County Criminal Court jury of four counts of aggravated robbery, a Class B felony, and four counts of attempted aggravated robbery, a Class C felony, and was sentenced by the trial court as a Range I, standard offender to an effective sentence of twenty-seven years in the Department of Correction. We affirmed his convictions and sentences on direct appeal, and our supreme court denied his application for permission to appeal. State v. Jermaine Hughey, No. W2004-01074-CCA-R3-CD, 2006 WL 2000734, at *1 (Tenn. Crim. App. July 18, 2006), perm. to appeal denied (Tenn. Nov. 13, 2006).

Our direct appeal opinion reveals that the petitioner's convictions stemmed from two armed robbery episodes: an August 9, 2002, home invasion robbery involving four Hispanic victims in which the petitioner acted alone; and an August 30, 2002, episode at the parking lot of the same apartment complex involving three of the August 9 victims and one of their neighbors in which the petitioner acted with an accomplice. Id. at *1-7.

On November 14, 2007, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. Following the appointment of post-conviction counsel, the petitioner filed amended and supplemental petitions in which he alleged that counsel was ineffective for failing to include the petitioner's presentence report at the sentencing hearing or in the record of the direct appeal and for failing to provide to the petitioner or use at trial potentially exculpatory evidence, which consisted of a police incident report in which the description of the perpetrator was different from the petitioner's appearance.

An evidentiary hearing was held on December 17, 2008, and March 30, 2009. At the December 17 hearing, the petitioner testified that he was represented by one lawyer at trial and a different lawyer at the motion for new trial, sentencing hearing, and on appeal because his first lawyer was allowed to withdraw his representation. He said that he and appellate counsel[1] got along and that he had no concerns about how counsel handled the sentencing hearing, except that he later wished counsel had called some of his family members to testify on his behalf.

On cross-examination, the petitioner acknowledged that appellate counsel forcefully argued at the sentencing hearing that he should receive a shorter sentence based on the fact that no shots were fired and his criminal history was minimal. He further acknowledged that the trial court stated at the hearing that the most important enhancement factor on which it was basing the sentences was that the petitioner had intentionally selected the victims because of their race.

Appellate counsel testified that he had been a criminal defense attorney since August 1994 and had handled "a great many" trials, as well as appeals, during his career. He said that the petitioner's family hired him approximately two or three weeks before the sentencing hearing because trial counsel was relieved from representation due to a conflict of interest that developed after trial. Prior to the sentencing hearing, appellate counsel reviewed the presentence report and talked to the petitioner's family, a number of whom wanted to testify on the petitioner's behalf at the hearing. However, because he was of the opinion that none

_____

[1] For simplicity's sake, we have elected to refer to the lawyer who represented the petitioner at trial as "trial counsel" and to the lawyer who began his representation with the motion for new trial as "appellate counsel."

of the family members had anything to say that would not "have come across as angry and bitter about the verdict in the trial," appellate counsel advised them to write letters of support instead.

Appellate counsel testified that he argued the petitioner's minimal criminal history at the sentencing hearing, but the trial court, in sentencing, placed great weight on the fact that the petitioner had allegedly targeted the victims because of their race. Appellate counsel explained that he did not have the presentence report admitted as an exhibit to the hearing or included in the record on appeal because he had never done so in the forty-plus appeals he had handled prior to the petitioner's case, never seen it done in any other cases he had reviewed or observed, and had always assumed that the presentence report, which was routinely ordered by the trial court prior to sentencing and placed in the jacket, was automatically included in the technical record on appeal. Consequently, he was "quite shocked" when the direct appeal opinion was released stating that he had failed to include the presentence report in the record. In his opinion, the appellate court was "sort of sidestepping the issue" because the trial court referred exclusively to the report in its ruling and "all of the pertinent parts of the Presentence Report were all there in front of the [Court of Criminal Appeals] in the transcript form."

At the March 30, 2009, evidentiary hearing, trial counsel testified that he had been practicing criminal defense law in Shelby County since 1977 and had participated in many trials during his thirty-year career. He said that his key defense strategy consisted of attacking the identification of the petitioner as the perpetrator of the crimes. When shown an incident report from the Memphis Police Department containing a description of the suspect as a man with a thin build with diamond earrings and a dark complexion, trial counsel testified that he had no independent recollection of the document but that if it was included in his discovery packet, he would have reviewed and shared it with the petitioner, as was his protocol. Finally, he explained the measures he took to challenge witness identifications of the petitioner:

> My recollection of the case is that the case turned on identification. There were multiple individuals that identified [the petitioner] as the perpetrator. I used what tools I knew to use [in] making trial tactical decisions on how to attack their credibility in identifying, and accuracy, in addition to credibility, of identifying [the petitioner] as the perpetrator.

The petitioner testified that he became unhappy with trial counsel's representation shortly before trial because counsel never came to see him in jail before he made bond, sending an associate and a partner in his place. In addition, trial counsel met with him only once before trial and perhaps a couple of times during the trial. He further testified, however, that trial counsel replied to his letters, provided him with copies of discovery, and discussed

-3-

with him his trial defense strategy, which consisted of showing that it was a case of mistaken identity. Overall, the petitioner rated trial counsel's trial performance as "moderate" or "fair," stating that he was "[n]ot completely" satisfied with counsel's cross-examination of witnesses. He acknowledged, however, that counsel did question the witnesses about their identifications: "Well, he asked questions, you know, while, you know, I guess, examining them, he asked different questions. You know, he did do that."

The petitioner testified that he did not see the police department incident report from his case until appellate counsel gave it to him after the trial. He said that the description of the suspect differed from his appearance because he, unlike the suspect, was a light-skinned black man, had no piercings, and considered himself to be of an average, rather than thin, build. He said that he was five feet, six inches tall, currently weighed 175 pounds, and had probably gained five to ten pounds since the time of his arrest. On cross-examination, he acknowledged that the incident report described the suspect as five feet, seven inches tall with a weight of 160 pounds. He further acknowledged that he lived in the same apartment complex as the victims and that one of the victims testified at trial that she had recognized him from the complex.

On May 8, 2009, the post-conviction court entered a detailed written order denying the petition for post-conviction relief. Among other things, the court found that the petitioner had not shown that trial counsel was deficient for failing to obtain or cross-examine the witnesses with respect to the police report, or that he was prejudiced as a result. The court further found that the petitioner had not shown that any prejudice resulted from appellate counsel's failure to have the presentence report admitted as an exhibit to the sentencing hearing or included in the record of the direct appeal.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the

post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).  The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The petitioner contends that trial counsel was ineffective for failing to notify him of the potentially exculpatory evidence contained in the police report and for failing to use the evidence to cross-examine the witnesses at trial.  He also argues that appellate counsel was ineffective for failing to include the presentence report as an exhibit at the sentencing hearing or in the record of the direct appeal.  The State argues, *inter alia*, that the petitioner failed to prove his allegations of ineffective assistance of counsel by clear and convincing evidence. We agree with the State.

The post-conviction court's ruling with respect to the petitioner's claim that trial counsel was ineffective for failing to introduce or use the police report includes the following findings of fact and conclusions of law:

> This Court also notes that Petitioner's evidence on this issue is insufficient to prove his allegations. Petitioner failed to provide trial testimony for this Court's review to show that cross-examination of the identification witnesses during the trial was inadequate. All that has been proven is that one page of a police report was shown to Petitioner after his trial was completed. This [C]ourt is asked to speculate about from whom the police got the information and who it describes.
>
> After reviewing all of the evidence presented during the hearing, as well as the Court of Appeals opinion, this Court finds that Petitioner has failed to prove this issue by clear and convincing evidence. Further, even if Petitioner's allegations are true, he has failed to show that he was prejudiced by his counsel's failure to use the police report in question. It appears to this Court that proof of identity was overwhelming. The victims saw petitioner in the neighborhood on multiple occasions, and called police to the location where he was arrested.

The record fully supports the findings and conclusions of the post-conviction court with respect to this claim. Trial counsel, an experienced defense attorney, testified that he had no recollection of the police report but that if it was included in his discovery packet he would have reviewed and provided it to the petitioner, as that was his established protocol in every case. He also said that he used all the tools at his disposal to attack the witnesses' credibility and the accuracy of their identifications. Even assuming, *arguendo*, that trial counsel did not have access to the police report and consequently was unable to cross-examine the victim with respect to its contents, the petitioner has not shown that he was prejudiced as a result, given the strong identification proof that was introduced at trial. We conclude, therefore, that the petitioner has failed to meet his burden of showing either a deficiency in counsel's performance or any resulting prejudice to his case.

The post-conviction court made the following findings of fact and conclusions of law with respect to the petitioner's claim of ineffective assistance of appellate counsel:

> This Court finds that Petitioner has, again, failed to show that he was prejudiced in any way by appellate counsel's failure to introduce into evidence the presentence report. It is obvious that the sentencing court and [appellate counsel] discussed [the petitioner's] criminal history during the sentencing hearing. Actually, a review of Petitioner's criminal history contained in

Exhibit #1 [presentence report] to this hearing shows only one misdemeanor conviction. However, it is clear to this Court, and [a]ppellate counsel freely acknowledges, that the sentencing court based its decision for the sentence on Enhancement Factor #23, that Petitioner targeted a certain race of people in selecting his victims and committing his crimes. Thus, Petitioner ha[s] failed to prove that introduction of the presentence report would have resulted in a lower sentence. It is for this reason that this issue must be denied.

As the post-conviction court noted, the record establishes that the trial court based its enhanced sentences primarily on the fact that the petitioner targeted the victims because of their race. See Jermaine Hughey, 2006 WL 2000734, at *23 ("We note that the trial court stressed that enhancement factor (23) was the most important of the three enhancement factors it applied and that the trial court did not say how much weight it gave to the other two factors."). We, therefore, agree with the post-conviction court that the petitioner cannot establish that he was prejudiced by the fact that the presentence report was not included as an exhibit to the sentencing hearing or in the record of the direct appeal.

## CONCLUSION

We conclude that the petitioner has not met his burden of showing that he received ineffective assistance of either trial or appellate counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

-7-